UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| JUAN DIAZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 09-10298-JLT |
| | ) | |
| PETER ST. AMAND, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

REPORT AND RECOMMENDATION ON
PETITION FOR WRIT OF HABEAS CORPUS

February 14, 2012

SOROKIN, M.J.

The Petitioner, Juan Diaz, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Docket # 1. The Respondent opposes the Petition. Docket # 28 . For the following reasons, I RECOMMEND that the Petition be DENIED.

I.     STATEMENT OF FACTS

The recitation of facts made by the Massachusetts Supreme Judicial Court (SJC) is entitled to a presumption of correctness on habeas review. 28 U.S.C. § 2254(e)(1). The SJC found as follows:

> "On the afternoon of July 3, 2003, the victim waved $1,000 at the defendant and Nelson Aponte, the defendant's friend, as they passed each other walking down Orchard Street in Springfield. Later that night, the victim was sitting in front of 39 Orchard Street, the home of two of his good friends, Hector and Emilio Deida. The victim had recently purchased a new vehicle, and Emilio was washing it for him in the driveway next to the

1

house. Sometime after midnight, the defendant called over from the parking lot behind the house and told the victim to join him. The victim left the Deidas' house and met up with the defendant in the parking lot between Orchard and Washburn Streets. Once there, the defendant pointed a gun at the victim and told him to take out his wallet and put it on the ground. A neighborhood resident, Roel Burgos, was passing through the parking lot just as the victim was ordered to put his wallet on the ground. The defendant told Burgos to go away. Burgos complied.

After Burgos left the parking lot, Nelson Aponte, another neighborhood resident, passed through the same lot. The defendant pointed a gun at Aponte and ordered him to get the victim's car and bring it to the lot. The defendant tossed the victim's keys to Aponte. Aponte walked back to the Deidas' house and retrieved the car. He drove it around the block and joined the defendant and the victim, who had moved to a second parking lot across the street, between Washburn and Lowell Streets. Aponte returned the keys to the victim and left the scene. Moments later two shots were fired, hitting the victim in his lungs and heart. He died a short time later.[1]

Burgos ran back to the parking lot after the shots were fired and remained there while the police were summoned. The defendant came up to him and instructed him to tell the police that "some black people came over here . . . shooting." Two days later, the defendant stood on Orchard Street and yelled out, "any of the witnesses who rat on me I'll shoot." On another occasion, the defendant told Burgos that "you just make sure to keep your mouth shut." Later, when the defendant saw Burgos at the court house, he told Burgos, "You messed up, you wasn't supposed to say nothing."

Commonwealth v. Diaz, 448 Mass. 286, 287-288 (2007).

---

[1] There was evidence that the codefendant, Jose Pena, was also present with the defendant and the victim as events unfolded in the two parking lots. Aponte testified that Pena was with the defendant and the victim when he (Aponte) was ordered to retrieve the victim's vehicle. Burgos also testified that he returned to the area after Aponte brought the car to the second parking lot, and saw Pena holding a gun (the same gun the defendant previously held) and standing with the victim near the trunk of the victim's car, with Aponte standing a short distance away. Pena told Burgos to "back off" and that it was "not [his] business." He did not see the defendant at that point, but he did see that someone was sitting in the car. Burgos heard Pena ordering the victim to get in the trunk, but the victim refused, saying that "if I get in there you all going to shoot me." Pena insisted that Burgos leave; Burgos spoke briefly to Aponte, and then left the scene. The jury found Pena not guilty of both armed robbery and murder in the first degree.

II.     PROCEDURAL BACKGROUND

Diaz was convicted of murder in the first degree on theories of deliberate premeditation and extreme atrocity or cruelty in the Hampden County, Massachusetts, Superior Court on November 24, 2004, and was sentenced to a state-prison term of his natural life. Docket # 40 at 1. On January 31, 2007, the Massachusetts Supreme Judicial Court ("SJC") affirmed the conviction on direct appeal. Id. at 1-2. On August 14, 2007, Diaz filed in the Superior Court (through new counsel) a motion for new trial, a motion for an evidentiary hearing, and a motion for discovery; all of these motions were denied on February 6, 2008. Id. at 2, Docket # 5-7 (Ex. F). Diaz filed a notice of appeal six days later, and then, on February 21, 2008, filed a motion for leave to appeal to the Single Justice Session of the SJC. Docket #s 40 at 2, 5-8 (Ex. G). That motion was denied by a Single Justice of the SJC in a Memorandum and Order dated June 18, 2008. Docket #s 40 at 2, 5-9 (Ex. H).

On February 27, 2009, Diaz filed (through new counsel) the instant federal habeas corpus action. Id. His claim that his "rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution were violated where he was denied the effective assistance of counsel in his criminal case," was comprised of four subsidiary claims: (1) that appellate counsel failed to substantively challenge the improper admission of a witness's alleged prior consistent statement, which was introduced as "first complaint" testimony in a non-sexual assault case; (2) that appellate counsel failed to raise in Diaz's direct appeal "flagrant errors" in the prosecutor's closing argument; (3) that appellate counsel failed to raise on direct appeal jury instruction errors that led to Diaz's conviction; and (4) that the prosecutor knowingly used perjured testimony of one Nelson Aponte to secure a conviction against Diaz, and that appellate

counsel was ineffective for failing to raise this issue on direct appeal. Id. at 2-3.

On May 1, 2009, the Respondent moved to dismiss the Petition on the ground that Diaz had failed to exhaust state remedies with respect to all his claims. Id. at 3; See Docket #s 11,12. On January 26, 2010, this Court issued an Order permitting Diaz to dismiss the unexhausted claim but that otherwise, it would allow the Respondent's motion to dismiss. Docket #s 18, 23. On February 16, 2010, following a Motion for Clarification by Diaz (Docket # 24), the Court ordered that only the unexhausted portion of Diaz's fourth subsidiary claim – that Diaz's appellate counsel was ineffective for failing to raise the prosecutor's knowing use of perjured testimony on direct appeal – needed to be dismissed. Docket # 25. On February 23, 2010, Diaz moved to dismiss the unexhausted portion of his fourth subsidiary claim (Docket # 26), which motion the Court allowed on February 26, 2010, thereby simultaneously denying the Respondent's motion to dismiss. Docket # 27.

On January 19, 2010, Diaz brought a second motion for a new trial in the Superior Court, claiming that his appellate counsel was ineffective for failing to raise the prosecutor's knowing use of perjured testimony on direct appeal. Docket # 38 at 2. This motion was denied on July 20, 2010, and Diaz filed a notice of appeal on August 26, 2010. Docket # 40 at 3. On October 19, 2010, Diaz filed an application for leave to appeal the denial of his second motion for new trial along with a motion requesting leave for that application to be filed late in the SJC Single Justice Session. Id. That application was denied on December 6, 2010, by a Single Justice of the SJC, who indicated both that the application was untimely, and that it did not raise a new and

substantial question warranting leave to appeal.[2] Id. at 3-4.

On October 12, 2011, Diaz filed a Motion to Reconsider, asking the Court for permission to reassert the portion of his fourth subsidiary claim that the Court had previously found unexhausted, claiming that it had since been exhausted. Id. at 4. That motion is the subject of a separate Report and Recommendation of this date.

III. DISCUSSION

In his Petition, Diaz asserts that his "rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution were violated where he was denied the effective assistance of counsel in his criminal case." Docket # 2 at 13. This broad claim is comprised of four subsidiary claims: (1) that appellate counsel failed to substantively challenge the improper admission of a witness's alleged prior consistent statement, which was introduced as "first complaint" testimony in a non-sexual assault case (Docket # 2 at 15); (2) that appellate counsel failed to raise in Diaz's direct appeal "flagrant errors" in the prosecutor's closing argument (Docket # 2 at 17); (3) that appellate counsel failed to raise on direct appeal jury instruction errors that led to Diaz's conviction (Docket # 2 at 25); and (4) that the prosecutor knowingly used perjured testimony of one Nelson Aponte to secure a conviction against Diaz and that appellate counsel was ineffective for failing to raise this issue on direct appeal (Docket # 2 at 35).[3]

---

[2] On December 10, 2010, the Petitioner filed a motion for a ruling on his motion to file his application late; the Single Justice then denied the motion to file the application late. Docket #s 38 at 4, 41, Ex. B.

[3] The portion of this claim alleging ineffective assistance of appellate counsel was dismissed by the Court. Docket # s 26, 27. This portion was the subject of a Motion for Reconsideration filed by the Petitioner (Docket # 38), seeking to add this claim back in to the

"Under Massachusetts' 'gatekeeper statute,' judicial review of the denial of a post-conviction motion in a first degree murder case is prohibited unless permitted at the discretion of a single justice of the SJC 'on the ground that it presents a new and substantial question which ought to be determined by the full court.'" Yeboah-Sefah v. Ficco, 556 F.3d 53, 74 n.13 (1st Cir.2009) (citing M.G.L. c. 278, § 33E). "In this manner, a full quorum of the Supreme Judicial Court is spared the task of hearing frivolous or duplicative claims." Commonwealth v. Smith, 460 Mass. 318, 321-322 (2011) (quoting Dickerson v. Att'y Gen., 396 Mass. 740, 744-45 (1986)). "An issue is not 'new' for purposes of the statute if it could have been addressed at trial or on direct review, had the defendant properly raised it there." Commonwealth v. Ambers, 397 Mass. 705, 707 (1986) (explaining that § 33E "requires that the defendant present all his claims of error at the earliest possible time, and failure to do so precludes relief on all grounds generally known and available at the time of trial or appeal"); Yeboah-Sefah, 556 F.3d at 74-75. Thus, the First Circuit has held "that the single justice's decision to deny full SJC review of petitioner's claim under § 33E is based on a state procedural waiver, namely, his failure to raise that claim in prior state proceedings, and therefore, rests on an independent and adequate state ground for decision . . . At least '[w]here there has been procedural waiver below,' the denial of review under § 33E qualifies as an independent and adequate state ground. " Id. at 75 (quoting Simpson v. Matesanz, 175 F.3d 200, 206 (1st Cir.1999)); but see Phoenix v. Matesanz, 189 F.3d 20, 25-26 (1st Cir.1999) (concluding gatekeeper justice's denial of review on grounds that petitioner's ineffective assistance claim was

---

Petition as it is now properly exhausted. That Motion to Reconsider, as noted supra, is the subject of a separate Report and Recommendation issued this same day.

"not substantial " (although new) reached the merits of the federal claim, and thus could not be treated as being grounded in state law). When "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred." Obershaw v. Lanman, 453 F.3d 56, 67-68 (1st Cir.2006) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "The default may be excused, and the bar to federal habeas review removed, only in certain circumstances: where the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Id. at 68 (internal citations omitted).

   A.   Failure to challenge on appeal prior consistent statement

Diaz argues that his appellate counsel failed to "substantively challenge the improper admission of a witnesses [sic] alleged consistent prior statement, which was introduced as 'first complaint' testimony in a non-sexual assault case." Docket # 2 at 15. The prosecutor sought to elicit from Michael Arroyo testimony about a conversation that occurred between Arroyo and Burgos just before the shooting. Docket # 2 at 6. Trial counsel objected on hearsay grounds. The judge conducted a voir dire in response to trial counsel's additional objection that the statement was more prejudicial than probative, after which the judge decided to admit the testimony as a prior consistent statement. Commonwealth v. Diaz, 448 Mass. at 293.[4] On direct appeal, Diaz argued that trial counsel was ineffective in objecting to the prior statement on

---

[4] As the SJC noted, "Burgos had been extensively impeached. The Commonwealth sought to rehabilitate him by offering Arroyo's testimony that Burgos had met up with him just after Burgos had been in the parking lot, at which time Burgos reported seeing the defendant with a gun to the victim's head while the victim was on his knees." Diaz, 448 Mass. at 293 n.11.

7

hearsay grounds. The SJC concluded that "[t]he defendant does not suggest some other means by which defense counsel might have convinced the judge to exclude this damaging testimony, and the mere fact that he interposed objections on grounds that were unsuccessful does not demonstrate ineffective assistance." Id.

Diaz's argument in the instant petition, however, is slightly different. Here, he argues that his appellate counsel was ineffective in failing to challenge the admissibility of this statement because it was, as a factual matter, not a prior consistent statement. Docket # 2 at 15. This argument was considered and rejected on collateral review by the Single Justice of the SJC. The Single Justice concluded:

> The defendant applies under the gatekeeper provision of G. L. c. 278, § 33E, for leave to appeal the denial of his motion for new trial. He argues principally that his counsel on direct appeal provided ineffective assistance of counsel by failing to present on appeal an argument that the admission of a prior statement by a key Commonwealth witness, Roel Burgos, as a prior consistent statement was error because the statement in fact was inconsistent with Burgos's trial testimony. The defendant's counsel on direct appeal challenged the admission of Burgos's prior statement through the witness Michael Arroyo, although on different grounds. See Commonwealth v. Diaz, 448 Mass. 286, 293 (2007) (rejecting defendant's argument on appeal that trial counsel was ineffective in objecting to prior statement on hearsay grounds). Given that the particular ground of challenge now raised to the admissibility of the statement could have been raised on direct appeal but was not, this new challenge is not "new" within the meaning of G. L. c. 278, § 33E; it has been waived. Commonwealth v. Ambers, 397 Mass. 705, 707-708 (1986). The defendant cannot avoid the consequence of this fact by couching the claim as one of ineffective assistance of appellate counsel. Commonwealth v. Kilburn, 438 Mass. 356, 360 (2003). Even if this were not the case, the substance of the challenge lacks merit. As the Commonwealth argues, Burgos's challenged statement was essentially consistent with his trial testimony that he had seen the defendant point a gun at the victim's head and directed him give up his wallet. {In its opinion on the defendant's direct appeal, the court noted that Burgos had been extensively impeached, indicating, at least implicitly, that admission of a prior consistent statement for rehabilitation purposes was not error. See Commonwealth v. Diaz, 448 Mass. 285, 293 n.11 (2007). The defendant does not argue otherwise. The defendant's contention is rather premised on the assumption that Burgos's prior statement to Arroyo concerned the second time Burgos had seen the victim on the night in question - when, Burgos testified, he saw the victim with the codefendant Pena and did not see the defendant - rather than the first time, when,

8

according to Burgos's trial testimony, he had seen the defendant point a gun at the victim's head. At trial, the prosecutor pointed out in argument about the admissibility of this prior statement that defense counsel for the defendant and Pena were making this same assumption, an assumption the prosecutor described as factually erroneous. The judge implicitly accepted the prosecutor's point in concluding that the statement could be introduced as a prior consistent statement.} Accordingly, the defendant cannot prevail on his claims of ineffective assistance of appellate counsel predicated on this underlying legal issue. See Commonwealth v. Dy[o]us, 436 Mass. 719, 735 (2002).

Memorandum and Order, SJ-2008-0091 (Supreme Judicial Court for Suffolk County, June 18, 2008) (hereinafter "Single Justice Memorandum and Order") Docket # 5-9 (Ex. H) (footnote in braces). "Whether the state court decision here is or is not impervious to habeas review depends on whether it rests, expressly or inferentially, on a state-law procedural waiver (or some other state law consideration), or whether, instead, it involves the resolution of the merits of [the Petitioner's] federal constitutional claim . . . In determining the above, the opinion of the SJC gatekeeper justice, as the 'last reasoned opinion' of a state court addressing those claims, is the focus of our attention. Phoenix, 189 F.3d at 25.

The Single Justice did not waive the state procedural rule that claims brought in a gatekeeper petition under M.G.L. c. 278, § 33E must be "new and substantial" in the instant case, rather she applied the rule. Although the Single Justice went on to briefly consider the merits of the claim, "[her] decision primarily rested on the determination that the claim was not 'new,' based on a procedural waiver below, which serves as an independent and adequate procedural basis." Id. at 75 (citing Phoenix,189 F.3d at 26 n.2) (noting that "it does not undercut the adequacy and independence of the state grounds" if the single justice found a procedural default, but then briefly reviewing the merits of a claim for miscarriage of justice under state law).

Diaz has demonstrated neither cause for the default, nor actual prejudice resulting

9

therefrom. See Obershaw, 453 F.3d at 68. Although Diaz appears to recognize that the claim was waived (see Docket # 2 at 17) he argues that the state court ruling that the claim was waived because his appellate counsel failed to raise it creates "circular reasoning [that] would block every claim of ineffective assistance of appellate counsel brought by every defendant." Id. He then notes generally that he was "prejudiced by appellate counsel's error since the substantive issue of the admissibility of the proferred testimony was never reviewed." Id. The state rule on this point is clear: "[E]very waived claim can be couched in ineffectiveness terms. Were we to permit a defendant to resurrect a waived claim simply by alleging that his counsel was ineffective, the waiver doctrine itself, a crucial component of our legal system, would quickly become meaningless." Commonwealth v. Kilburn, 438 Mass. 356, 360 (2003). Diaz's argument on this claim is therefore insufficient. He has not established that appellate counsel was constitutionally ineffective by making the argument raised on direct appeal rather than the new theory now advanced. This claim is procedurally defaulted and federal habeas review is barred.

B.     Additional claims

Diaz raises two additional claims of ineffective assistance of appellate counsel, and one claim alleging that the prosecutor knowingly used the perjured testimony of a witness.[5] The underlying gatekeeper petition focused almost exclusively on the issue of the prior consistent statement, discussed supra, but there is a brief paragraph noting that in addition to that issue presented by Diaz's counseled issue, the motion judge also ruled on six issues Diaz presented pro se. The issues and exhibits relevant to those claims were evidently included in the petition.

---

[5] As discussed supra, Diaz moved to amend his Petition to include a claim that appellate counsel was ineffective for failing to raise this last claim, which motion is the subject of a separate Report and Recommendation issued this same day.

Docket # 5-8 at 15.  The instant habeas Petition raises three of those six issues.

>    1.   <u>Ineffective assistance of appellate counsel in failing to raise errors in the prosecutor's closing argument</u>

Diaz argues that appellate counsel rendered ineffective assistance by failing on direct appeal to raise the issue of prosecutorial errors made during closing argument – a claim Diaz first raised in the Superior Court in conjunction with his motion for new trial.  Docket # 5-7 at 4. In his habeas Petition, Diaz presses four of the errors he raised in the Superior Court.

(1) Diaz argues that the following statement is a "suggestion[] of personal knowledge" and therefore error (Docket # 2 at 21):

> "Now, there has been quite a bit of discussion by Attorney Frank about Gordo not threatening anybody.  The threats, the fear, are palpable in this courtroom, and have been. Attorney Frank suggested that Hector Deida had no fear in testifying.  He was trembling on the stand."  Tr. 6:135-136; Docket # 5-7 at 6.[6]

(2) Arroyo testified that Burgos told him he saw the defendant pointing a gun at Martinez.  Docket # 5-7 at 6.   Arroyo also testified he emptied his pockets and gave everything to his fiancee before walking with Burgos to the parking lot.  Docket # 5-7 at 6.   Diaz argues that the following comment by the prosecutor  "totally lacks any foundation in the evidence" (Docket # 2 at 21):

> "Now what is the significance of Michael Arroyo emptying his pockets?  Well, I would suggest to you it's so he doesn't get robbed when he goes to confront Gordo who has Joey [Martinez] at a gun.  That's the significance."  Tr. 6:146; Docket # 5-7 at 6.

---

[6] In the Superior Court, Diaz claimed additional error in the prosecutor's comment "what do Hector and Emilio Deida tell you?  In this case, as afraid and frightened and scared as they are, they tell you some very key information."  Tr. 6:146-147.  In the instant petition, the Petitioner quotes this language, but makes no separate argument on this point.  See Docket # 2 at 20; Docket # 5-7 at 7.  The Superior Court judge noted this argument is any event "nearly identical" to the Petitioner's first argument regarding the prosecutor's comments about Hector Deida's fear.  Docket # 5-7 at 7.

(3) The prosecutor stated the following regarding a taped conversation between the defendant and Burgos:

> "Think about this for just a moment. You are Juan Diaz, Gordo. You are charged with murder on the basis of Roel Burgos's statements to the police. and for the first time in a year, as you hear in the tape, they talk to each other. Is this what you expect to hear in the call, how much they love each other? What are you doing? Why are you making this up? You're putting my life in jeopardy, man. It's not what's on the tape that's significant.
>
> What is the tape consistent with? The tenor of threats of violence in this case. That's what is significant about the tape, not what's said. What's not said. What's not said."

Tr. 6:150-151; Docket # 5-7 at 8. Diaz argues that "the prosecutor's suggestion that a complete lack of evidence can support a permissible inference sufficient to convict Diaz is clearly erroneous." Docket # 2 at 22.

(4) Diaz claims the following comments were error:

> "What was the purpose you heard in giving him 500 bucks? To get out of town, to leave. For reasons that you know, he can't be here. Snitches get stitches. And Roel Burgos's life in Springfield was done the moment he walked out of this courtroom."

Tr. 6:153-54; Docket # 5-7 at 9. Diaz argues that "[h]ere again, the prosecutor infers that he has some knowledge that the jury does not have about Burgos's life in Springfield. The statement is totally unsupported by any evidence." Trial counsel sought a curative instruction, which the trial judge declined to give. Docket # 2 at 22.

The Superior Court judge addressed each argument in turn, and concluded "there was no substantial likelihood of a miscarriage of justice resulting from the challenged portions of the prosecutor's closing argument and, therefore, prior appellate counsel was not ineffective for his failure to raise these issues on direct appeal." Id. at 5.

### 2. Ineffective assistance of appellate counsel in failing to raise error in jury instructions

Diaz claims error in the jury instructions and ineffective assistance of counsel for failure to raise the issue on direct appeal. In particular, Diaz claims that the judge's instruction on reasonable doubt was flawed when the judge stated that the "evidence must establish the truth of the fact to a reasonable and a moral certainty" (Docket # 5-7 at 9) because this language "told the jury that their moral decision could supersede their rational decision based on the evidence" and fell "below the constitutional 'beyond a reasonable doubt' standard." Docket # 2 at 26. The Superior Court judge concluded "[t]here was no error in the jury instruction and, therefore, prior appellate counsel was not ineffective for his failure to raise these issues on direct appeal." Docket # 5-7 at 10.

### 3. Prosecutor's knowing use of perjured testimony of one Nelson Aponte

Diaz claims that Aponte perjured himself by denying on the witness stand that he received a "reward" as a result of his testimony (Docket # 2 at 26), when, in fact, he testified in a separate case that he was "receiving some consideration for his testimony in this murder case." Id. Further, Diaz argues that the Commonwealth "chose not simply to ignore the false testimony, but to encourage it by offering promises to witnesses, and withholding such information from the defense deprived Diaz of his rights to due process and a fair trial." Docket # 2 at 39-40. The Superior Court judge concluded that no substantial likelihood of a miscarriage of justice occurred given that "[d]efense counsel and the jury were fully aware of the inducement made to Aponte. Defense counsel cross-examined Aponte regarding the matter and read excerpts from the transcript of Aponte's testimony in the separate trial." Docket # 5-7 at 12.

4. State Appellate Review

With respect to these three claims, the Single Justice of the SJC concluded that "the motion judge (who was also the trial judge) addressed and rejected each of these claims in his memorandum denying the defendant's motion for a new trial. I am satisfied, essentially for the reasons stated by the motion judge and by the Commonwealth in its opposition to this application, that the claims lack merit, and do not present any new or substantial question for purposes of G.L. c. 278, § 33E. Commonwealth v. Ambers, supra at 707-708." Single Justice Memorandum and Order, Docket # 5-9 (Ex. H) at 4.

5. Discussion

For the reasons discussed supra, these three claims likewise rest on an independent and adequate state-law ground for decision – namely, that the claims, brought in a gatekeeper petition under M.G.L. c. 278, § 33E, were not "new and substantial," resulting in procedural default. Diaz does not recognize that the claims are procedurally defaulted, and therefore presents no argument that the default should be excused based on cause and actual prejudice. Federal habeas review of these claims is thus barred. Diaz has not addressed, let alone established, that the decision to eschew these three issues in favor of raising other (or only other) issues on appeal constitutes constitutionally ineffective assistance of counsel. See Lattimore v. Dubois, 311 F.3d 46, 57 (1st Cir.2002)(citing Smith v. Robbins, 528 U.S. 259, 288 (2000))("Appellate counsel is not required to raise every non-frivolous claim, but rather selects among them to maximize the likelihood of success on the merits"). Moreover, on the merits, Diaz cannot meet the burden to establish prejudice because, among other reasons, he has not established that factual determinations made by the state court were erroneous.

III.	CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court DENY the Petition for Writ of Habeas Corpus (Docket # 1).[7]

                                          /s / Leo T. Sorokin
                                          UNITED STATES MAGISTRATE JUDGE

---

[7] The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).